NEWPORT TRIAL GROUP
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@trialnewport.com
Richard H. Hikida, Bar No. 196149
rhikida@trialnewport.com
Victoria C. Knowles, Bar No. 277231
vknowles@trialnewport.com
4100 Newport Place Dr., Suite 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN ACUNA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MYOGENIX INCORPORATED; and DOES 1-10, Inclusive,<br><br>Defendants. | Case No.: '13CV2673 JAH WVG<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff EDWIN ACUNA ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following on information and belief:

## I.    INTRODUCTION

1.    MYOGENIX, INCORPORATED (hereinafter referred to as "Defendant") manufactures, markets, and sells "Hypershock" ("the Product") as an "Extreme Pre-Workout Product" which Defendant advertises as containing Citrulline Malate. Defendant claims that the Citrulline Malate in the Product, along with the other ingredients, is "engineered to accomplish 1 thing: RESULTS. Within 15 minutes of consumption, you'll experience a furious desire to Rage through a workout, and a pump you've probably never felt before in your life. At the end of your workout, the results will be obvious (keep track of your workout!) as you count up the sets, reps, and weight lifted." In reality, a laboratory analysis conducted utilizing state-of-the-art High

- 1 -

CLASS ACTION COMPLAINT

Pressure Liquid Chromatography (HPLC) protocol shows that the Product contains *no* bio-available amount of Citrulline Malate, and certainly not at the limits stated on the Defendant's Product label. The Product therefore cannot provide the results promised, cannot perform as Defendant claims, and does not contain the active ingredients promised.

2. Plaintiff brings this class action lawsuit to enjoin the ongoing deception of tens of thousands of California and United States consumers by Defendant, and to recover the money taken by this unlawful practice.

## II.   THE PARTIES

**A.   Plaintiff.**

3. Plaintiff is a resident of California and purchased Defendant's Product in 2013. Plaintiff relied on Defendant's representations regarding the ingredients and efficacy of the Product, as detailed herein, and but for those representations, Plaintiff would not have purchased or paid as much for the Product.

**B.   Defendant.**

4. Upon information and belief, Myogenix, Incorporated is a California corporation that manufactures, markets, and sells the Product and does business across the United States.

5. The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

6. At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions complained of herein were

alleged and made known to, and ratified by, each of the other Defendants (Myogenix, Incorporated and DOE Defendants will hereafter collectively be referred to as "Defendant").

### III. JURISDICTION AND VENUE

7. A Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the class are citizens of different states than the Defendant. *See* 28 U.S.C. §1332(d)(2)(A).

8. This Court also has personal jurisdiction over Defendant because Defendant currently does business in this state.

9. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District and a substantial portion of the conduct complained of herein occurred in this District.

### IV. FACTS

10. Defendant manufactures, markets, and sells "Hypershock" as an "Extreme Pre-Workout Product" that is "engineered to accomplish 1 thing: RESULTS. Within 15 minutes of consumption, you'll experience a furious desire to Rage through a workout, and a pump you've probably never felt before in your life. At the end of your workout, the results will be obvious (keep track of your workout!) as you count up the sets, reps, and weight lifted."

11. Defendant further claims the Product underwent "12 months of development, and much trial and error", and specifically claims that its Product contains Citrulline Malate. Indeed, Defendant lists Citrulline Malate as its *first* ingredient its proprietary blend.

12. In reality, Defendant's Product *contains no* bio-available amount of Citrulline Malate, and certainly not at the limits stated on the Defendant's Product label – as confirmed by a recent laboratory analysis utilizing state-of-the-art High Pressure

CLASS ACTION COMPLAINT

Liquid Chromatography (HPLC) protocol. Thus, all of Defendant's claims based on the ingredient's capabilities are completely false.

13. Defendant's misrepresentations regarding the Product's ingredients, and therefore the efficacy assertions of its Product were designed to, and did, lead Plaintiff and others similarly situated (collectively the "Class") to believe that the Product contained Citrulline Malate, and thus could cause intense muscle building. Plaintiff and members of the Class relied on Defendant's misrepresentations and would not have paid as much, if at all, for the Product but for Defendant's misrepresentations.

14. Defendant sells a *one-month* supply of the Product for approximately $64.99 based on the preceding false advertising claims. As a result, Defendant has wrongfully taken millions of dollars from consumers nationwide.

15. Plaintiff brings this class action lawsuit to enjoin the ongoing deception of thousands of consumers by Defendant, and to recover the money taken by this unlawful practice.

## V.   CLASS ACTION ALLEGATIONS

16. Plaintiff brings this class action for damages and other monetary relief on behalf of the following class:

> All persons located within the United States who purchased Hypershock during the four years preceding the filing of this complaint through the date of final judgment in this action (the "Class").

17. This action is brought and may be properly maintained as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23(a)(1)-(4) and 23(b)(1)-(3). This action satisfies the numerosity, typicality, adequacy, predominance and superiority requirements of those provisions.

18. The Class is so numerous that the individual joinder of all of its members is impractical. *See* Fed. R. Civ. P. 23(a)(1). While the exact number and identities of Class members are unknown to Plaintiff at this time and can only be ascertained

through appropriate discovery, Plaintiff is informed and believes the Class includes tens of thousands of members. Plaintiff alleges that the Class may be ascertained by the records maintained by Defendant.

19. Common questions of fact and law exist as to all members of the Class which predominate over any questions affecting only individual members of the Class. *See* Fed. R. Civ. P. 23(a)(2). These common legal and factual questions, which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

    a.    Whether Defendant's Product contains an active amount of Citrulline Malate;

    b.    Whether Defendant's Product can provide the results promised;

    c.    Whether Defendant's representations regarding the Product were false;

    d.    Whether Defendant knew that its representations were false;

    e.    Whether Defendant's conduct constitutes a violation of California's false advertising law (Cal. Bus. & Prof. Code §§ 17500, et seq.);

    f.    Whether Defendant's conduct constitutes an unfair, unlawful, and/or fraudulent business practice in violation of California's unfair competition law (Cal. Bus. & Prof. Code §§ 17200, et seq.);

    g.    Whether Defendant's conduct constitutes a violation of California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, et seq.);

    h.    Whether Plaintiff and Class members are entitled to compensatory damages, and if so, the nature of such damages;

    i.    Whether Plaintiff and Class members are entitled to restitutionary relief; and

    j.    Whether Plaintiff and Class members are entitled to injunctive relief.

20. Plaintiff's claims are typical of the claims of the members of the Class. *See* Fed. R. Civ. P. 23(a)(3). Plaintiff and all members of the Class have sustained injury and are facing irreparable harm arising out of Defendant's common course of conduct as complained of herein. The losses of each member of the Class were caused directly by Defendant's wrongful conduct as alleged herein.

21. Plaintiff will fairly and adequately protect the interests of the members of the Class. *See* Fed. R. Civ. P. 23(a)(4). Plaintiff has retained attorneys experienced in the prosecution of class actions, including complex consumer and mass tort litigation.

22. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. *See* Fed. R. Civ. P. 23(b)(3). Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

23. The prosecution of separate actions by thousands of individual Class members would create the risk of inconsistent or varying adjudications with respect to, among other things, the need for and the nature of proper notice, which Defendant must provide to all Class members. *See* Fed. R. Civ. P. 23(b)(1)(A).

24. The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class

members to protect their interests. *See* Fed. R. Civ. P. 23(b)(1)(B).

25. Defendant has acted or refused to act in respects generally applicable to the Class, thereby making appropriate final injunctive relief with regard to the members of the Class as a whole. *See* Fed. R. Civ. P. 23(b)(2).

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW

### (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*)

**(By Plaintiff and on Behalf of the Class Against Defendants)**

26. Plaintiff incorporates by this reference the allegations contained in the paragraphs above as if fully set forth herein.

27. Plaintiff has standing to pursue this cause of action because Plaintiff has suffered injury in fact and has lost money as a result of Defendant's actions as set forth herein. Specifically, Plaintiff purchased the Product in reliance on Defendant's false labeling, ingredient claims, and marketing claims.

28. Defendant has engaged in false advertising as it has disseminated false and/or misleading labeling and representations about the Product and its ingredients.

29. Defendant knew or should have known by exercising reasonable care that its representations were false and/or misleading. During the Class Period, Defendant engaged in false advertising in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*, by misrepresenting in its labeling, advertising, and marketing of the Product to Plaintiff, Class members, and the consuming public, that its Product contained certain ingredients when it did not.

30. By disseminating and publishing these statements in connection with the sale of the Product, Defendant has engaged in and continues to engage in false advertising in violation of Bus. & Prof. Code §§ 17500, *et seq.*

31. As a direct and proximate result of Defendant's conduct, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited

to, money.  Therefore, Defendant has been unjustly enriched.  Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff requests restitution and restitutionary disgorgement for all sums obtained in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*  Plaintiff seeks injunctive relief, restitution, and restitutionary disgorgement of Defendant's ill-gotten gains as specifically provided in Cal. Bus. & Prof. Code § 17535.

32. Plaintiff and Class members seek to enjoin Defendant from engaging in these wrongful practices, as alleged herein, in the future.  There is no other adequate remedy at law and if an injunction is not ordered, Plaintiff and the Class will suffer irreparable harm and/or injury.

## SECOND CAUSE OF ACTION
## UNLAWFUL, FRAUDULENT & UNFAIR BUSINESS PRACTICES
## (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)
**(By Plaintiff and on Behalf of the Class Against Defendants)**

33. Plaintiff incorporates by this reference the allegations contained in the paragraphs above as if fully set forth herein.

34. Plaintiff has standing to pursue this cause of action because Plaintiff has suffered an injury in fact and has lost money as a result of Defendant's actions as set forth herein.  Specifically, Plaintiff purchased the Product in reliance on Defendant's ingredient claims and efficacy assertions based thereon.  Plaintiff used the Product as directed, but it was not of the standard, quality and grade advertised.

35. Defendant's actions as alleged in this Complaint constitute an unfair or deceptive business practice within the meaning of California Business and Professions Code §§ 17200, *et seq.*, the Unfair Competition Law ("UCL"), in that Defendant's actions are unfair, unlawful, and fraudulent, and because Defendant has made unfair, deceptive, untrue, or misleading statements in advertising media, including the Internet, within the meaning of California Business and Professions Code §§ 17200, *et seq.*

36. Defendant knew or should have known by exercising reasonable care that its representations were false and/or misleading.  During the Class Period, Defendant

engaged in unfair, unlawful, and fraudulent business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, by misrepresenting in its labeling, advertising, and marketing of the Product to Plaintiff, Class members, and the consuming public that, the Product contained the ingredients claimed and was effective based thereon.

37. Each of the aforementioned representations alleged in this Complaint was false and misleading because the Product did not contain ingredients Defendant explicitly labeled the Product as containing.

38. Defendant's business practices, as alleged herein, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers in that consumers are misled by the claims made with respect to the Product as set forth herein.

39. Defendant's business practices, as alleged herein, are unlawful because they violate the False Advertising Law, as alleged in the preceding section.

40. Similarly, Defendant's business practices, as alleged herein, violate provisions of California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 109875 *et seq.*[1] The Sherman Law incorporates "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the [FDCA]" as "the food labeling regulations of this state." *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1087 (2008); *see also* Cal. Health & Safety Code § 110100(a). Defendant has violated the Sherman Law in the following respects:

> a. Defendant has misbranded the Product in violation of Cal. Health & Safety Code § 110760: "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded." Under the Sherman Law, "Any food is misbranded if

---

[1] California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by the [FAL]." In essence, "[s]ection 17200 borrows violations from other laws by making them independently actionable as unfair competitive practices … [and] a practice may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163, 180 (1999).

its labeling is false or misleading in any particular" (Cal. Health & Safety Code § 110660), or if "… its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. Sec. 343(q))[2] of the federal act and the regulations adopted pursuant thereto." (Cal. Health & Safety Code § 110665.)

    b.    Defendant has also violated the Sherman Law by disseminating false advertising of a food or selling a food that is falsely advertised. (*See* Cal. Health & Safety Code § 110390 ("It is unlawful for any person to disseminate any false advertisement of any food . . . . An advertisement is false if it is false or misleading in any particular."); Cal. Health & Safety Code § 110395 ("It is unlawful for any person to manufacture, sell, . . . or offer for sale any food . . . that is falsely advertised."); Cal. Health & Safety Code § 110398 ("It is unlawful for any person to advertise any food . . . that is adulterated or misbranded."))

    c.    Defendant has also violated several of the food labeling regulations promulgated by the Food & Drug Administration, which California's Sherman Law incorporates, with respect to its Product. Cal. Health & Safety Code § 110100(a). Namely, the label of a dietary supplement that is offered for sale is required to bear nutrition labeling in compliance with 21 C.F.R. § 101.36. *See* 21 C.F.R. § 101.36(a). Defendant's label for the Product is therefore

---

[2] 21 U.S.C. § 343(q)(5)(F) provides, "A dietary supplement product . . . shall comply with the requirements of subparagraphs (1) and (2) in a manner which is appropriate for the product and which is specified in regulations of the Secretary which shall provide that—(i) nutrition information shall first list those dietary ingredients that are present in the product in a significant amount and for which a recommendation for daily consumption has been established by the Secretary, except that a dietary ingredient shall not be required to be listed if it is not present in a significant amount, and shall list any other dietary ingredient present and identified as having no such recommendation; (ii) the listing of dietary ingredients shall include the quantity of each such ingredient (or of a proprietary blend of such ingredients) per serving . . . ." 21 U.S.C. § 343(q)(5)(F)(i)-(ii).

required to contain information on dietary ingredients that have a Reference Daily Intake (RDI) or a Daily Reference Value (DRV) and their subcomponents as well as information on dietary ingredients for which RDI's and DRV's have not been established ("other dietary ingredients").[3] *Id.* §§ 101.36(b)(2), (b)(3). "The quantitative amount by weight per serving of other dietary ingredients shall be presented in the same manner as the corresponding information required" for information on dietary ingredients that have a RDI or DRV or "shall be presented immediately following the name of the other dietary ingredient." *Id.* § 101.36(b)(3)(ii). The dietary ingredients that have a RDI or DRV are required to be declared on a nutrition label "when they are present in a dietary supplement in quantitative amounts by weight that exceed the amount that can be declared as zero in nutrition labeling of foods." *Id.* § 101.36(b)(2). Dietary ingredients contained in a proprietary blend "shall be declared in descending order of predominance by weight." *Id.* § 101.36(c)(2). According to 21 C.F.R. § 101.4(a), "Ingredients required to be declared on the label or labeling of a food … shall be listed by common or usual name **in descending order of predominance by weight**…." Defendant has failed to meet these requirements as it lists as its first ingredient in its proprietary blend, Citrulline Malate, amidst other ingredients when HPLC has revealed there is *no* bio-available amount of Citrulline Malate contained in the Product. Therefore, *all*

---

[3] The dietary ingredients that have a RDI or a DRV and are to be declared are total calories, calories from fat, total fat, saturated fat, trans fat, cholesterol, sodium, total carbohydrate, dietary fiber, sugars, protein, vitamin A, vitamin C, calcium and iron. 21 C.F.R. § 101.36(b)(2).

CLASS ACTION COMPLAINT

ingredients are falsely listed in violation of 21 C.F.R. §§ 101.4(a) and 101.36(c)(2).

    d.   Defendant similarly violated the Sherman Law by failing to test its Product in accordance with 21 C.F.R. § 111.70(e) to "ensure the quality of the dietary supplement." This requirement must be read in conjunction with 21 C.F.R. § 111.75(a) which demands that "Before you use a component, you must: (1)(i) Conduct at least one appropriate test or examination to verify the identity of any component that is a dietary ingredient…." Thus, even if ingredients are present in products in small amounts, they are nonetheless dietary ingredients and finished products which must be tested to verify their actual presence. As the HPLC test confirms, there is *no* bio-available amount Citrulline Malate in the Product and as such, either Defendant completely failed to perform the required tests and is *unaware* of the falsity of its labeling, or Defendant put its Product on the market claiming certain ingredients were present even though test results affirmatively confirmed they were not present in the Product.

    e.   Defendant lastly violates the Sherman Law with respect to both 21 C.F.R. § 111.70(e) and 21 C.F.R. § 111.75(a), which are part of the Food & Drug Administration's Good Manufacturing Practices requirements, by producing, marketing, and selling adulterated products. *See* 21 C.F.R. § 111 *et seq.* A supplement is "adulterated" if "it has been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations…." 21 U.S.C. § 342(g)(1). Further, if a supplement is adulterated, it is not a proper "dietary supplement" and cannot be labeled as such. Here, Defendant has labeled each its Product as a

"dietary supplement" thereby mandating that Defendant comport with the good manufacturing practice regulations. Defendant has blatantly and illegally failed to do so and thus, the Product is an adulterated substance according to the FDCA regulations.

41.  Defendant's business practices, as alleged herein, are fraudulent because they are likely to, and did, deceive customers—including Plaintiff and members of the Class—into believing that the Product has characteristics, ingredients, and benefits it does not have.

42.  Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition since Defendant is marketing and selling its Product in a manner likely to deceive the public.

43.  As a direct and proximate result of Defendant's wrongful business practices in violation of Business and Professions Code §§ 17200, *et seq.*, Plaintiff and members of the Class have suffered economic injury by losing money as a result of purchasing the Product. Plaintiff and members of the Class would not have purchased or would have paid less for the Product had they known that it was not as represented.

44.  Pursuant to Business and Professions Code § 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those set forth in the Complaint. Plaintiff and the Class also seek an order requiring Defendant to make full restitution of all moneys they wrongfully obtained from Plaintiff and the Class.

## **THIRD CAUSE OF ACTION**
## **VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT**
## **(CAL. CIV. CODE §§ 1750, *ET SEQ.*)**
**(By Plaintiff and on Behalf of the Class Against Defendants)**

45.  Plaintiff incorporates by this reference the allegations contained in the paragraphs above as if fully set forth herein.

CLASS ACTION COMPLAINT

46. Plaintiff has standing to pursue this cause of action because Plaintiff has suffered an injury in fact and has lost money as a result of Defendant's actions as set forth herein. Specifically, Plaintiff purchased the Product in reliance on Defendant's claims about the Product's ingredients, and the efficacy assertions based thereon. Plaintiff used the Product as directed, but it was ineffective because it lacked the ingredient, Citrulline Malate, advertised by Defendant.

47. Defendant has engaged in and continues to engage in business practices in violation of California Civil Code §§ 1750, *et seq*. (the "Consumers Legal Remedies Act") by making false representations concerning the Product's ingredients and capabilities based thereon. These business practices are misleading and/or likely to mislead consumers and should be enjoined.

48. Defendant has engaged in deceptive acts or practices intended to result in the sale of the Product in violation of Civil Code § 1770. Defendant knew and/or should have known that its representations of fact concerning the ingredients of the Product were material and likely to mislead the public. Defendant affirmatively misrepresented that the Product contained certain ingredients and benefits which it did not have.

49. Defendant's conduct alleged herein violates the Consumers Legal Remedies Act, including but not limited to, the following provisions: (1) using deceptive representations in connection with goods or services in violation of Civil Code § 1770(a)(4); (2) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Civil Code § 1770(a)(5); and/or (3) advertising goods or services with intent not to sell them as advertised in violation of Civil Code § 1770(a)(9). As a direct and proximate result of Defendant's conduct, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to, money. Therefore, Defendant has been unjustly enriched.

50. There is no other adequate remedy at law, and Plaintiff and Class members will suffer irreparable harm unless Defendant's conduct is enjoined.

51. Plaintiff's counsel mailed to Defendant, by certified mail, return receipt requested, the written notice required by Civil Code Section 1782(a). A copy of this letter is attached hereto as Exhibit One. Should Defendant fail to respond within thirty days, Plaintiffs will amend to seek damages under the California Consumer Legal Remedies Act.

52. The declaration of venue required by Civil Code § 1780(d) is concurrently filed herewith and is attached hereto as Exhibit Two.

53. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the Consumer Legal Remedies Act since Defendant is still representing that its Product has ingredients, characteristics, uses, benefits, and abilities which are false and misleading, and have injured Plaintiff and the Class. Plaintiff and the Class therefore seek an order of this court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those set forth in the complaint, pursuant to California Civil Code Section 1780(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the Class request that the Court enter an order or judgment against Defendants, and each of them as named in the future, as follows:

1. For an order certifying the Class, appointing Plaintiff and his counsel to represent the Class, and notice to the Class to be paid by Defendants;

2. For damages suffered by Plaintiff and Class members;

3. For restitution to Plaintiff and Class members of all monies wrongfully obtained by Defendants;

4. For an injunction ordering Defendants to cease and desist from engaging in the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

CLASS ACTION COMPLAINT

5.  For both pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded;

6.  For Plaintiff's costs of the proceedings herein;

7.  For reasonable attorneys' fees as allowed by statute; and

8.  For any and all such other and further relief that this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.

Dated: November 6, 2013

NEWPORT TRIAL GROUP
A Professional Corporation
Scott J. Ferrell

By: _____
Scott J. Ferrell
Attorney for Plaintiff and the Class